**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| KEN G. LeBEAU and § | |
| PAMELA LeBEAU, § | |
| § | |
| Plaintiffs, § | |
| v. § | CIVIL ACTION NO. 4:11-0841 |
| § | |
| MARATHON E.G. PRODUCTION § | |
| LIMITED, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

Ken LeBeau ("LeBeau") and his wife, Pamela, sued Marathon E.G. Production Limited, Marathon E.G. Holding Limited, Marathon E.G. LPG Limited, Equatorial Guinea LNG Holdings Limited (a/k/a EG LNG Co.), Wood Group Equatorial Guinea Limited, John Wood Group PLC (a/k/a Wood Group), and Seatrax Services, Inc. after LeBeau allegedly suffered severe physical injuries on January 14, 2010 while working at the "Defendants' facility in Equatorial Guinea[.]" (Docket Entry No. 1, Ex. A, ¶ 13). The LeBeaus filed suit in state court. The suit was timely removed based on diversity jurisdiction.

One of the defendants, Seatrax Services, Inc., a Louisiana corporation, has moved to dismiss the claims against it, asserting that it was improperly joined to the suit. (Docket Entry No. 2). The LeBeaus have responded, (Docket Entry No. 14), and also have moved to remand on the basis that they are both Louisiana citizens, (Docket Entry No. 15). The defendants have responded to the remand motion by arguing that Seatrax Services's Louisiana citizenship can be disregarded, making the properly joined parties completely diverse. (Docket Entry No. 16). The LeBeaus have replied. (Docket Entry No. 17).

Based on the motions, responses, and reply; the record; and the applicable law, this court denies the LeBeaus' motion to remand and grants Seatrax Services's motion to dismiss. The reasons are explained below.

## I.     The Legal Standards

A defendant has the right to remove a case to federal court when federal subject-matter jurisdiction exists and the removal procedure has been properly followed. *See* 28 U.S.C. § 1441. The federal court must remand the case to state court before final judgment if it determines that it lacks subject-matter jurisdiction. *Id.* § 1447(c). A federal court has subject-matter jurisdiction based on diversity of citizenship "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" *Id.* § 1332(a). In this case, the parties agree that the LeBeaus are Louisiana citizens, (Docket Entry No. 1, Ex. A, ¶ 2; Docket Entry No. 3, ¶ 3); and that one of the defendants, Seatrax Services, is a Louisiana citizen, (Docket Entry No. 1, Ex. A, ¶ 9; Docket Entry No. 3, ¶ 1). Unless Seatrax Services's citizenship can be disregarded, remand is required.

To establish that a nondiverse defendant has been improperly joined for the purpose of defeating diversity jurisdiction, the removing party must prove either that there has been actual fraud in the pleading of jurisdictional facts, or that there is no reasonable possibility that the plaintiff will be able to establish a cause of action against that party in state court. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). The second approach asks whether "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant" under state law. *Id.* (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)). "To decide whether a plaintiff has a reasonable basis for recovery under

state law, a district court 'may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against' an in-state defendant." *Holden v. Ill. Tool Works, Inc.*, 429 F. App'x 448, 451 (quoting *Smallwood*, 385 F.3d at 573). In this case, the parties have submitted evidence in addition to the pleadings. The Fifth Circuit has "repeatedly held that a district court," in conducting the improper-joinder analysis, "may examine the record to determine whether a reasonable basis exists for predicting that state law might impose liability on a defendant who alleges fraudulent joinder." *Holden*, 429 F. App'x at 451 (citing *Smallwood*, 385 F.3d at 573–75; *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815–16 (5th Cir. 1993); *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995); and *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)). The court also may consider discovery "tailored to the question at hand[.]" *Smallwood*, 385 F.3d at 574. If the court is unable to determine whether joinder was improper on the basis of a summary-judgment-like inquiry, the court may conclude that "the inability to make the requisite decision [regarding remand] in a summary manner points to an inability of the removing party to carry its burden." *Id.* The court must resolve a motion to remand "as swiftly as possible so that the plaintiff maintains his right to choose the forum in which to litigate." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 310 (5th Cir. 2005). "The burden of persuasion on a party claiming improper joinder is a heavy one." *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 514 (5th Cir. 2009) (internal quotation marks omitted). Contested factual allegations and ambiguities of state law must be considered in the light most favorable to the plaintiff. *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 812 (5th Cir. 2011).

**II.     The Motion to Remand**

In its motion to dismiss and the response to the LeBeaus' motion to remand, Seatrax Services argues that it was improperly joined because it was LeBeau's employer. As an employee of Seatrax Services, LeBeau could not sue that party for tort damages but could obtain compensation only under the Louisiana Workers' Compensation Act. (Docket Entry No. 3, ¶¶ 1–2). The LeBeaus argue that the employer was Seatrax, Inc., a separate company. (Docket Entry No. 14, at 7–9; Docket Entry No. 15). The defendants, including Seatrax Services, respond that LeBeau was a "borrowed employee[] from [Seatrax Services's] affiliate company, Seatrax, Inc." (Docket Entry No. 16, at 3). The LeBeaus reply that the record reveals disputed fact issues about whether LeBeau was "borrowed" by Seatrax Services on January 14, 2010, when the accident and injury took place. (Docket Entry No. 17, at 4).

Under the Louisiana Workers' Compensation Act, "workers' compensation is the exclusive remedy available to an 'employee or his dependent for work-related injuries and illnesses," unless the injury or illness resulted from an intentional act. *Deshotel v. Guichard Operating Co.*, 916 So. 72, 75 (La. 2004) (citing LA. REV. STAT. 23:1032). The Act applies to an employee borrowed from one employer to work for another. Under Louisiana law, the employer that initially hired the employee is the "immediate employer" or "general employer," while the borrowing employer is the "special employer." LA. REV. STAT. 23:1031(C). "[B]oth the special employer and the immediate employer [or general employer] shall be liable jointly and in solido to pay benefits as provided under this Chapter." *Id.* "The special and the general employers shall be entitled to the exclusive remedy protections provided in [the Act]." *Id.* "[A] borrowed employee is barred from bringing a tort action against the borrowing employer." *Weston v. M-I, L.L.C.*, No. 10-370, 2010 WL 4325931, at

4

*1 (La. Ct. App. Nov. 3, 2010) (quoting *Pradia v. S. Personnel of La., Inc.*, 776 So. 2d 474, 477 (La. Ct. App. 2000)).[1]

"The issue of whether a borrowed employee relationship exists is a matter of law for the court to determine." *Omega Constr. Co. v. Thornco, Inc.*, 694 So. 2d 65, 68 (La. Ct. App. 2008); *accord Carr v. Spherion*, Civ. A. No. 08-0326, 2009 WL 455408, at *4 (W.D. La. Jan. 28, 2009). To determine whether an employee is borrowed and by which entity, a court applies a multifactor test:

> 1) Who had the right of control over the employee and the work he was performing beyond mere suggestion of details or cooperation?
>
> 2) Whose work was being performed?
>
> 3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
>
> 4) Did the employee acquiesce in the new work situation?
>
> 5) Did the original employer terminate his relationship with the employee?
>
> 6) Who furnished the tools and place for performance?
>
> 7) Was the new employment over a considerable length of time?
>
> 8) Who had the right to discharge the employee?
>
> 9) Who had the obligation to pay the employee?

---

[1] The Louisiana courts recognize joint employment, which "requires a 'common enterprise that contemplates the employment and control of the claimant by one of the interested parties for the benefit of all.'" *Perry v. Perry & Sons Valut & Grave Serv.*, 872 So. 2d 611, 619 (La. Ct. App. 2004) (quoting *Kahl v. Boudin*, 449 So. 2d 1334, 1336 (La. 1984)); *accord Hebert v. Richard*, — So. 3d —, 2011 WL 2638164, at *8 (La. Ct. App. 2011). When "[e]ach corporation provides different services which are not dependent upon, related to, or complementary of the services provided by the other corporation," a joint-employment relationship does not exist. *Perry*, 872 So. 2d at 619; *accord Hebert*, 2011 WL 2638164, at *8. The defendants have not argued that Seatrax Services and Seatrax, Inc. were LeBeau's joint employers. Instead, they argue that Seatrax, Inc. loaned LeBeau to Seatrax Services.

*E.g.*, *Manning v. Simpson*, 50 So. 3d 908, 910 (La. Ct. App. 2010). "Although no one factor is dispositive in determining borrowed servant status, the right of control factor weighs heavily in favor of borrowed servant status." *E.g.*, *id.*; *but see Cobb v. Delta Exports, Inc.*, 918 So. 2d 1080, 1087 (La. Ct. App. 2005) ("While at one time the central inquiry in a borrowed servant determination focused upon the right of control factor, the supreme court has remarked that the 'modern justification for employer liability is not based so much on the employer's control of the employee's actions, but on the concept of "enterprise liability."'" (quoting *Morgan v. ABC Mfr.*, 710 So. 2d 1077, 1083 (La. 1998)). "Though the borrowed employee status is a question of law, the [multi]factor test used to determine that question, is fact-driven." *Thibodeaux v. EEX Corp.*, No. Civ. A. 98-3511, 1999 WL 1044337 (E.D. La. Nov. 17, 1999); *accord Cobb*, 918 So. 2d at 1087. The court must look at the totality of the circumstances in determining borrowed-employee status. *E.g.*, *Hebert*, 2011 WL 2638164, at *6; *see also Mejia*, 52 So. 3d at 84 (explaining that "there is no fixed test" for determining borrowed-employee status).

In support of remand, the LeBeaus submitted the following evidence: paystubs showing that LeBeau's paychecks were issued by Seatrax, Inc., not Seatrax Services, (Docket Entry No. 15, Ex. 4); invoices from Seatrax, Inc. to Marathon E.G. Production for LeBeau's work, (*id*., Ex. 5); and a letter sent by Seatrax, Inc. to LeBeau, in which LeBeau acknowledged by signature that he had received a pay advance from Seatrax, Inc., (*id.*, Ex. 6). The defendants submitted the following evidence: a contract between Marathon Oil Company and Seatrax Services dated February 2009 and numbered 1108210 (the "Master Contract") in effect at the time of the accident,[2] (Docket Entry No.

---

[2] The LeBeaus submitted excerpts of a master contract between Marathon Oil Company and Seatrax, Inc. (Docket Entry No. 15, Ex. 8). As the defendants respond, this contract had been superseded at the time of LeBeau's accident. (Docket Entry No. 16, at 2).

16, Ex. A); the job order between Marathon E.G. Production (on behalf of Marathon Oil) and Seatrax Services, placed under the contract, in operation at the time of the accident, (*id.*, Ex. B); the affidavit of Olav Pedersen, Vice-President of Contracts for Seatrax, Inc.,[3] (*id.*, Ex. C); and a workers' compensation insurance policy naming both Seatrax, Inc. and Seatrax Services as insureds, (*id.*, Ex. 1).

In Pedersen's affidavit, he asserts that "SSI borrowed Ken LeBeau as an employee to work in Equatorial Guinea." (*Id.*, Ex. C, ¶ 2). Insofar as this statement offers a legal conclusion—that LeBeau was acting as a borrowed employee—the court may disregard it. *See, e.g.*, *Ramon v. Continental Airlines Inc.*, 153 F. App'x 257, 259 (5th Cir. 2005) (citing *Galindo v. Precison Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)); CHARLES ALAN WRIGHT ET AL., 10B FEDERAL PRACTICE AND PROCEDURE § 2738 (3d ed. 1998). The issue is whether this statement is a disputed factual allegation.

The Master Contract, which took effect in February 2009, is between "Marathon Oil Company" and "Seatrax Services, Inc., a corporation incorporated under the laws of Louisiana." (Docket Entry No. 16, Ex. A, at A3). The Master Contract contains these definitions:

- Company: "Marathon Oil Company or any of its Affiliates who enter into Job Orders[.]" (*Id.*, ¶ D.06).

- Contractor: "the Party so identified within the opening preamble to the Contract"—Seatrax Services—"or any of its Affiliates who enter into Job Orders[.]" (*Id.*, ¶ D.17).

- Affiliate: "any company, corporation, or other business entity controlled by, in control of or under common control with a Party hereto." (*Id.*, ¶ D.01).

---

[3] The LeBeaus also submitted excerpts from Pedersen's deposition in which he refers to "Seatrax." (Docket Entry No. 15, Ex. 7). It is unclear whether Pedersen was discussing Seatrax Services or Seatrax, Inc. when referring to "Seatrax" generically, as he and counsel for the LeBeaus did throughout the deposition.

- Subcontractor: "any company, individual or entity, with whom Contractor, or one of Contractor's subcontractors, at any tier, enters into an agreement to perform any of the Work or to whom Contractor otherwise delegates performance of the Work." (*Id.*, ¶ D.51).

- Contractor Group: "Contractor, its Affiliates, its Subcontractors, and its and their respective directors, officers, employees (including agency personnel), servants, agents and invitees[.]" (*Id.*, ¶ D.20).

- Nominated Subcontractor: "any company, individual or entity nominated by Company to perform any part(s) of the Work, subsequently accepted and employed by Contractor as a Subcontractor." (*Id.*, ¶ D.42).

- Work: "the work, jobs, services, Goods, deliverables, duties and activities to be performed or provided by, or on behalf of, Contractor, under this Contract, including all necessary ancillary equipment, personnel and tools of trade to effect such work[.]" (*Id.*, ¶ D.60).

The Mater Contract obligated Seatrax Services: (1) to "furnish at the Work Site the personnel in the numbers and/or classifications as necessary for the Work," (*id.*, ¶ A8.1); (2) "at its sole cost, [to] provid[e] all requirements of Contractor's Personnel . . . including, but not limited to, . . . medical attention . . . and all other benefits," (*id.*, ¶ A8.2); and (3) to carry a specified amount of insurance coverage for workers' compensation and general liability, (*id.*, ¶ A22.1).

Under the Master Contract, Marathon Oil "may request [Seatrax Services] to perform Work by issuing a Job Order . . . . Each Job Order, after its execution by Company and Contractor, shall be considered a separate Contract between Company and Contractor." (*Id.*, ¶ B2.1). The Master Contract allowed for "Affiliate Job Orders" between Marathon Oil or its affiliate on the one hand, and Seatrax Services or its affiliate on the other. (*Id.*, ¶ B2.2). For a Job Order, Seatrax Services was required to "furnish, mobilize, operate and manage . . . Contractor's Personnel and Subcontractors for the purposes of the Work," (*id.*, ¶ B3.2), and to pay all labor costs to such personnel, (*id.*, ¶ B3.1). To receive payment under the Job Order, Seatrax Services (or its affiliates)

would invoice Marathon Oil. The Master Contract required invoices to "contain sufficient detail to support all charges, including Company approvals, names, locations, dates and times. Invoices shall include clear reference to the Contract, the Job Order, and AFE numbers and any such other information required by the Job Order." (*Id.*, ¶ B7.3).

The Master Contract recognizes that many Seatrax Services employees will be covered by the Louisiana Workers' Compensation Act. The Master Contract provides that "[i]rrespective of Company's status as the statutory employer or special employer [as defined in La. R.S. 23:1031 (C)] of Contractor's employees, Contractor agrees to remain primarily responsible for the payment of Louisiana Worker's Compensation benefits to its employees and shall not be entitled to seek contribution for any such payments from the Company." (*Id.*, ¶ B11.2 (brackets in original)).

Under the Master Contract, Marathon E.G. Production—a Marathon Oil affiliate and the "Company"—entered into "Job Order No.01" with Seatrax Services, the "Contractor." The Job Order was effective from March 6, 2009 through February 14, 2010 (or the Order's completion). (Docket Entry No. 16, Ex. B, at E1). The Job Order required Seatrax Services to "provide two (2) personnel, one (1) Supervisor and one (1) Operator" to perform the work under the Marathon E.G. Production Job Order. (*Id.*, ¶ 3.0.3). The Job Order listed a detailed reimbursement schedule:

- S230P crane: $10,555.56 per day (in-use rate); $5,277.78 per day (standby rate)

- Two air hoists, 10 klp: $444.44 per day (in-use rate); $266.66 per day (standby rate)

- Tools rig houses: $2,000 per day (in-use rate)

- Personnel—superintendent: $2,000 per day

- Personnel—crane operator: $2,000 per day

9

(*Id.*, ¶¶ 4.1–.2). The Job Order set these rates as "firm and fixed for the duration of this Job Order notwithstanding that Amendments for work scope may be agreed by the Parties." (*Id.*, at E3). Any invoice from Seatrax Services to Marathon E.G. Production required the following information:

> Central Projects Group
> Contract No. 1108210
> Job Order No. 01
> WBS/Cost Center No.TA.08.18672.EXP.001.04.01

(*Id.*, ¶ 5.0). Finally, Seatrax Services was to mail all invoices to:

> Marathon E.G. Production Limited
> Attn: CPSG
> P.O. Box 22167
> Tulsa, OK 74121-2167

(*Id.*)

The LeBeaus rely on the paystubs, which show that Seatrax, Inc. issued LeBeau the paychecks for his work during this period. (Docket Entry No. 15, Ex. 4). The fact that the paychecks were issused by Seatrax, Inc. is not dispositive.[4] The focus is not on the entity that issued the paychecks but rather on the entity that has the obligation to pay for the employee. *See Manning*, 50 So. 3d at 912.

The terms of the Master Contract and the Job Order establish that Seatrax Services was obligated to pay any personnel hired to work under the Job Order. This factor favors finding that LeBeau was a borrowed employee of Seatrax Services.

---

[4] As the Seventh Circuit has recognized, corporate parents often provide administrative services for its subsidiaries in the ordinary course of business. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 945 (7th Cir. 2000); *see also Dunn v. A/S Em. Z. Svitzer*, 885 F. Supp. 980, 988–89 (S.D. Tex. 1995). That Seatrax, Inc. may have paid LeBeau directly, and that Seatrax, Inc. may have invoiced Marathon E.G. Production (as opposed to Seatrax Services doing both) does not mean that LeBeau, for purposes of the Job Order, was not working for Seatrax Services.

The LeBeaus also rely on Seatrax, Inc. invoices to Marathon E.G. Production, which included LeBeau's labor costs. (*Id.*, Ex. 5). But these invoices appear to be for a different job order than the Job Order covering LeBeau's work when he was injured. Rather than listing "WBS/Cost Center No.TA.08.18672.EXP.001.04.01," as required under the Job Order, (Docket Entry No. 16, Ex. B, ¶ 5.0), both invoices list "WBS/COST CENTER No., PF 07.15794 CAP.002.02.5," (Docket Entry No. 15, Ex. 5).[5] Additionally, both invoices list different rates than those established by the Job Order. The invoices list the standby rate for the S230P crane as $6,333.33 per day. (*Id.*). The Job Order lists the crane's "firm and fixed" standby rate as $5,277.78 per day. (Docket Entry No. 16, Ex. B, at E3). The invoices submitted by the LeBeaus are not for the applicable Job Order and do not create a factual dispute as to LeBeau's status.

The defendants contend that "Ken LeBeau is receiving worker's compensation benefits under [Seatrax Services]'s policy[.]" (Docket Entry No. 16, at 4). The insurance policy names both Seatrax, Inc. and Seatrax Services as the insureds. (*Id.*, Ex. 1). This supports a finding of borrowed-employee status because the Master Contract obligates Seatrax Services—not Seatrax, Inc.—to carry workers' compensation insurance.[6] (Docket Entry No. 16, Ex. A, ¶ A22.1). The Master Contract makes clear that Seatrax Services (not Marathon Oil or Seatrax, Inc.) is liable for workers' compensation coverage and payments. (*See id.*, ¶ B11.2).

The dispositive evidence that LeBeau was acting as a borrowed employee for Seatrax Services comes primarily from the Master Contract and Job Order. One party to the Job Order was

---

[5] The invoices also reference "Contract No. 1008210." (Docket Entry No. 15, Ex. 5). This is likely a typo on the invoices: the contract number is 1108210. (Docket Entry No. 16, Exs. A, B). Even if it is not a typo, that further demonstrates that these invoices are not for the operative job order.

[6] According to the defendants, this insurance policy currently pays the workers' compensation benefits owed to LeBeau. (Docket Entry No. 16, at 4).

an affiliate of Marathon Oil (Marathon E.G. Production), and the other party was Seatrax Services, not Seatrax, Inc. Seatrax Services, not Seatrax, Inc., was responsible for completing the work called for by the Job Order. (*See* Docket Entry No. 16, Ex. A, *¶¶* B3.1–.2). Seatrax Services had the contractual right to control the work the two employees were to perform under the Job Order. LeBeau's work was for Seatrax Services—the Job Order's designated contractor—not Seatrax, Inc. Seatrax Services furnished the tools and place for LeBeau's performance under the Job Order. (*See id.*, ¶¶ B3.2, D.60). And, as previously discussed, Seatrax Services had the ultimate obligation to pay LeBeau under the Job Order. (*See id.*, ¶ B3.1). Under the totality of the circumstances, *see, e.g.*, *Hebert*, 2011 WL 2638164, at *6, it cannot be legitimately disputed that LeBeau was acting as a borrowed employee for Seatrax Services at the time of the accident giving rise to this suit.

The LeBeaus argue that because the defendants "attach[ed] over 100 pages of documents" in opposing remand, disputed factual allegations must be present that preclude remand. (Docket Entry No. 17, at 2). The defendants supported their position by attaching four exhibits, responding to the over 70 pages of documents the LeBeaus attached to their own brief. The number of pages submitted for consideration does not mean that the facts are disputed. Rather, the record evidence that the defendants presented shows that Marathon E.G. Production entered into the Job Order with Seatrax Services, not Seatrax, Inc.; that LeBeau was working under this Job Order when he was injured; and that LeBeau's work under this Job Order was as a borrowed employee of Seatrax Services. The LeBeaus' remedy against Seatrax Services lies exclusively in workers' compensation. *See* LA. REV. STAT. 23:1031(C). The defendants have met their burden of proving Seaxtrax Services's improper joinder to this suit. *See Kling Realty*, 575 F.3d at 514.

### III. The Motion to Dismiss

Seatrax Services also has moved to dismiss the claims against it on the basis of improper joinder.  (Docket Entry No. 2).  The motion to dismiss is granted.  *See* FED. R. CIV. P. 12(b)(1); *see also Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (explaining that district courts may conduct "a factual inquiry regarding the complaint's allegations only when the facts necessary to sustain jurisdiction"—in this case, the issue of borrowed-employee status—"do not implicate the merits of the plaintiff's claim").

**IV.     Conclusion**

The LeBeaus' motion to remand, (Docket Entry No. 15), is denied.  Seatrax Services's motion to dismiss, (Docket Entry No. 2), is granted.

SIGNED on November 28, 2011, at Houston, Texas.

_____
              Lee H. Rosenthal
         United States District Judge